_____

Nos. 95-3279/95-3282
_____

|                                    |   |                              |
|------------------------------------|---|------------------------------|
|                                    | * |                              |
| In re:  Grand Jury Subpoenas       | * | Appeals from the United States |
| Duces Tecum.                       | * | District Court for the Eastern |
|                                    | * | District of Arkansas.        |
|                                    | * |                              |

_____

Submitted:  December 12, 1995

Filed:  March 15, 1996
_____

Before BOWMAN, BEAM, and LOKEN, Circuit Judges.
_____

BEAM, Circuit Judge.


Appellants Herby Branscum, Jr. (Branscum), Herby Branscum, Jr., P.A.[1] (Branscum P.A.), Robert M. Hill (Hill), Robert M. Hill, P.A.[2] (Hill P.A.), and Perry County Bank appeal the district court's[3] orders refusing to quash grand jury subpoenas duces tecum served upon them by the Office of Independent Counsel and holding them in contempt for failing to comply with those subpoenas.  We affirm.


_____

[1]Herby Branscum, Jr., P.A. is the professional association in which Herby Branscum, Jr. practices law.

[2]Robert M. Hill, P.A. is the professional association in which Robert M. Hill previously practiced accounting.

[3]The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

## I. BACKGROUND

This appeal arises out of a grand jury investigation conducted by the Office of Independent Counsel (OIC) into what has become known as "Whitewater." On August 5, 1994, the Special Division of the United States Court of Appeals for the District of Columbia appointed Kenneth W. Starr as Independent Counsel pursuant to 28 U.S.C. § 593(b). Starr's task was to investigate possible violations of federal criminal law, "relating in any way to James B. McDougal's, President William Jefferson Clinton's or Mrs. Hillary Rodham Clinton's relationships with Madison Guaranty Savings and Loan Association, Whitewater Development Corporation, or Capital Management Services, Inc." Starr was given jurisdictional authority to investigate "other allegations" and violations "by any person or entity developed during the Independent Counsel's investigation referred to above and connected with or arising out of that investigation."

In the course of its investigation, the OIC uncovered information involving allegedly improper contributions to then-Governor Clinton's 1990 gubernatorial reelection campaign and his 1992 presidential campaign by the appellants and/or those agencies with which they were affiliated. Subsequently, grand jury subpoenas requesting papers and documents containing information regarding these contributions were issued on June 27, 1995.[4]

---

[4]The Hill and Branscum subpoenas, served upon them in both their individual and professional capacities, requested information regarding contributions to the 1990 and 1992 campaigns made by either themselves or their relatives. The subpoenas also requested information regarding transfers of funds to certain persons, mostly relatives. The subpoenas served upon the Perry County Bank requested information regarding expenses incurred between 1990 and 1993 and monthly account statements for the other appellants and their relatives.

In July 1995, the appellants moved to quash the subpoenas. The district court denied the motions on August 17. On August 22, the OIC asked the district court for an order to compel the production of documents by the appellants. Meanwhile, the appellants moved for reconsideration of the district court's August 17 order and again asked the court to quash the subpoenas. On August 24, the district court denied the renewed request to quash the subpoenas and granted the OIC's motion compelling the production of documents. The appellants were ordered to comply with the subpoenas by August 31.

As of August 31, the appellants had still not complied with the subpoenas. In its September 8 order holding the appellants in contempt, the district court allowed them until September 15 to purge themselves of their contempt. As of that date, fines of $1,000 per day against the individuals and $5,000 per day against the bank were to accrue. The appellants immediately appealed the September 8 order alleging that the district court erred in refusing to quash the subpoenas.

The appellants moved for, but were denied, a stay of the imposition of contempt sanctions pending appeal. Hill P.A., Branscum, and Perry County Bank complied with the subpoenas prior to the accrual of fines. However, because Hill and Branscum P.A. remained in contempt on September 15, they were fined $1,000 per day for their noncompliance.

On December 5, the district court issued an order requiring Hill and Branscum P.A. (the contemnors) to pay into the court registry the sum of $77,000, representing the contempt fines which had accrued through December 1, 1995.[5] The contemnors paid their fines and complied with the subpoenas on December 5. There is no

---

[5]Apparently, the fines which accrued between December 1 and December 5 remain unpaid.

-3-

indication in the record that the contempt order against these two contemnors has been purged. Appellants appeal the district court's orders dated August 17, 24 and September 8.

## II.   DISCUSSION

### A.   Mootness

As a threshold matter, we must determine whether the appellants' compliance with the subpoenas at issue renders this appeal moot. We hold that it does not.

The appellants argue that the OIC should be estopped from arguing mootness due to prior representations by the OIC that their compliance would not moot the appeal.[6] Even if the appellants' allegations are true, however, parties cannot agree to jurisdiction if none exists. If the case were moot, Article III would divest this court of jurisdiction and any representations to the contrary by the OIC would not alter that outcome.

The "existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts." In re Grand Jury Subpoenas Dated December 7 and 8, 40 F.3d 1096, 1099 (10th Cir. 1994) (citation omitted) (holding appeal of district court's denial of motion to quash subpoena was not moot due to compliance with subpoena because the court retained the authority to order improperly obtained materials returned or destroyed), cert. denied, 115 S. Ct. 1957 (1995). Consequently, federal courts have no authority to render decisions upon moot

_____

[6]In a letter dated October 27, 1995, requesting that the contemnors be required to pay the accrued fines into the court registry, Independent Counsel Starr implied that such compliance would not moot this appeal. Similarly, a November 16 letter from Assistant Independent Counsel Timothy Mayopoulos stated that the appellants could comply with both the subpoenas and the sanctions without mooting this appeal.

questions.  <u>Church of Scientology of California v. United States</u>, 506 U.S.
9, 12 (1992).

If a party has a sufficient stake in the outcome so that the court's
rendering of relief alleviates the harm complained of, the question
presented is not moot.  However, if during the pendency of an appeal, an
event occurs which destroys the court's ability to render the prevailing
party "`any effectual relief whatever,'" the appeal must be dismissed as
moot.  <u>Id.</u> (quoting <u>Mills v. Green</u>, 159 U.S. 651, 653 (1895)).  The OIC
contends such an event has occurred and that this appeal has become moot
because the requested documents have now been turned over to the grand
jury.[7]  "In <u>Church of Scientology</u>, however, the Supreme Court rejected a
similar argument, holding that the mere compliance with a summons . . .
does not moot an appeal."  <u>In re Grand Jury Subpoenas Dated December 7 and
8</u>, 40 F.3d at 1100 (citing <u>Church of Scientology</u>, 506 U.S. at 13).

In <u>Church of Scientology</u>, the IRS issued a summons requesting the
production of two audio tapes of conversations between Church officials and
their attorneys.  506 U.S. at 10.  At the time the summons was issued, the
tapes were being held by the clerk of court pursuant to court order.
Although the Church immediately appealed the issuance of the summons, the
clerk produced the tapes while the appeal was pending.  Arguing for
dismissal, the IRS claimed the compliance with the summons had rendered the
appeal moot.  The

---

[7]Admittedly, this argument reflects what has been the general
rule, i.e., that a contemnor's compliance with a grand jury
subpoena moots his ability to appeal the correctness of that
subpoena.  However, the United States Supreme Court's decision in
<u>Church of Scientology of California v. United States</u> altered the
general rule.  506 U.S. at 13.  Moreover, even if this court is
incorrect in applying <u>Church of Scientology</u> to these facts, the
error is harmless because on the merits, we find that the act of
the OIC in seeking these subpoenas was within the scope of its
prosecutorial jurisdiction.  <u>See</u> <u>United States v. Tucker</u>, No. 95-
3268, slip op. (8th Cir. Mar. 15, 1996).

United States Supreme Court, however, held that a court's ability to render partial relief, the potential return of items wrongly obtained through the summons, prevented the controversy from becoming moot.  Therefore, although it was incapable of providing full relief to the Church, the Court noted that it could "effectuate a partial remedy" by ordering the return or destruction of the tapes.  Id. at 13.

As in Church of Scientology, we could effectuate a partial remedy under these circumstances.  For example, we could find that the subpoenas were improperly issued and that the appellants' privacy interest in their documents "plainly would be benefitted by an order requiring" the return or destruction of those documents.  Reich v. National Eng'g & Contracting Co., 13 F.3d 93, 98 (4th Cir. 1993) (compliance with order directing production of documents did not render appeal from that order moot because persons forced to produce documents retained privacy interest in disclosed information).  See also Church of Scientology, 506 U.S. at 13.  As a result, it is not "impossible" for us to grant "any effectual relief whatever" in this case.[8]  Church of Scientology, 506 U.S. at 12.  Therefore, the case is not moot.[9]  We now turn to the merits of this appeal.

---

[8]As one court stated, "We merely point out that there is a possibility of equitable relief.  It is only if there is no such possibility that the appeal should be dismissed as moot."  O.J. Osborn v. Durant Bank & Trust Co., 24 F.3d 1199, 1210 (10th Cir. 1994).  Our observation of the mere availability of this partial relief in no way implies that we find the appellants' arguments on the merits compelling.  In fact, we do not.

[9]The appellants also argue that this case is not moot because it meets the "capable of repetition, yet evading review" exception to the mootness doctrine.  See, e.g., Southern Pac. Terminal Co. v. I.C.C. and Young, 219 U.S. 498, 515 (1911); In re Larson, 785 F.2d 629, 631 (8th Cir. 1986).  Because we find this appeal is not moot, we need not address this argument.

**B.    The Merits**

The appellants argue that, for various reasons, the OIC lacked authority to seek the issuance of the subpoenas in question.  Appellants claim the OIC was without such power because: (1) the Attorney General improperly referred the campaign contribution matters to the OIC as matters "related" to the OIC's prosecutorial jurisdiction; (2) the Attorney General failed to conduct the necessary recusal determination prior to referring these matters to the OIC; (3) the grant of prosecutorial jurisdiction to the OIC violates the Appointments Clause and Article III of the United States Constitution;  (4) the passage of Public Law 103-270 did not validly reauthorize the appointment of Independent Counsels; (5) the oaths given to Independent Counsel Starr and Assistant Independent Counsel Mayopoulos were invalid; and (6) the subpoenas violate the appellants' right of freedom of association under the First Amendment.

Issues one and two are precluded by another Whitewater case, decided concurrently with this appeal.  See United States v. Tucker, No. 95-3268, slip op. at 5-11 (8th Cir. Mar. 15, 1996) (holding that the Attorney General's referral decisions under the Independent Counsel law are nonreviewable).  Following the lead of Tucker, we also find appellants' "relatedness" argument unavailing.  The analysis to be made is, of course, fact specific and not totally controlled by Tucker.  We believe, however, that the campaign contribution allegations peculiar to this case are unquestionably related to both the OIC's original jurisdiction and any additional referrals by the Attorney General.  In sum, if Tucker passes the relatedness test, then this case even more clearly passes muster in that regard.   Further  discussion  of  issues  one  and  two  is,  therefore, unnecessary.  Also, as noted in the Tucker opinion, issue three was fully disposed of in Morrison v. Olson.  Tucker, slip op. at 6 n.3 (citing Morrison v. Olson, 487 U.S. 654 (1988)).

-7-

Issue four concerns the reenactment of the Independent Counsel Reauthorization Act of 1987 (1987 Act). As we observed in <u>Tucker</u>, the 1987 Act was reenacted in June 1994. <u>Tucker</u>, slip op. at 3. To accomplish this, Congress passed Public Law 103-270. This enactment amended the sunset provision (28 U.S.C. § 599) of the 1987 Act by substituting the year 1994 for the year 1987, thereby providing for the 1987 Act to run for five years from 1994 instead of from 1987. Notwithstanding appellants' arguments to the contrary, this was a valid renewal of the 1987 Act. Initially, we note that the intent of Congress controls the meaning of its words. <u>See</u> <u>Norfolk & W. Ry. Co., Inc. v. American Train Dispatchers' Ass'n</u>, 499 U.S. 117, 128 (1991); <u>Vermilya-Brown Co. v. Connell</u>, 335 U.S. 377, 386 (1948). Furthermore, generally speaking, "Congress may revive or extend an act by any form of words which makes clear its intention so to do." <u>Kersten v. United States</u>, 161 F.2d 337, 338 (10th Cir.), <u>cert. denied</u>, 331 U.S. 851 (1947). In amending the sunset provision, Congress made clear its intention to reenact the 1987 Act.[10] Consequently, we find that the 1987 Act was validly reenacted by Congress in June 1994.[11]

Appellants also argue Starr failed to take the required oath of office. As a result of this alleged failure, the appellants challenge Starr's authority to prosecute, administer the oath to

---

[10]Further evidence of this intent is found in the reports of the Senate and the House of Representatives regarding the Independent Counsel Reauthorization Act of 1994. <u>See</u>, <u>e.g.</u>, S. Rep. No. 101, 103d Cong., 1st Sess. (1993); H.R. Rep. No. 224, 103d Cong., 1st Sess. (1993).

[11]Appellants also argue that such reenactment violated the separation of powers doctrine. The appellants argue that the 1987 Act's sunset provision, which permitted the discretionary continuance of ongoing Independent Counsel actions, delegated a purely legislative function (determining the duration of legislation) to an executive branch office (the OIC). Because there is no allegation that any of the Independent Counsels involved in this grand jury investigation were "carryovers" from the 1987 Act, we need not address this argument.

his assistant Mayopoulos, and consequently, Mayopoulos's authority to prosecute. On August 9, 1994, Starr took the oath of office as required by 5 U.S.C. section 3331. In addition to the section 3331 oath, 5 U.S.C. section 3332 required Starr to file an affidavit stating that he had not purchased the office. Starr did not complete this affidavit until August 29, 1995. Because the section 3332 affidavit requirement is not a condition precedent to Starr taking office, however, this delay did not affect Starr's prosecutorial authority during the interim. Although Congress can impose conditions on an appointee which must be satisfied before that appointee takes office, the affidavit requirement found in 5 U.S.C. section 3332 is not such a condition precedent. In support of this conclusion, we need only refer to the language of section 3332.[12] That language requires that the affidavit be filed "within 30 days **after** the effective date of [the] appointment." 5 U.S.C. § 3332 (emphasis added). The use of the word "after" expressly negates the claim that the filing of the affidavit is a condition precedent to Starr's execution of his duties as Independent Counsel. Thus, Starr's execution of section 3331's oath permitted him to administer the oath of office to Mayopoulos. Therefore, this challenge to the OIC's prosecutorial authority fails.

Finally, the appellants argue that the subpoenas at issue violate their First Amendment right to freedom of association by imposing a "chilling" effect on their associations with the additional persons listed in the subpoenas, including certain

---

[12]Section 3332 provides:

> An officer, within 30 days after the effective date of his appointment, shall file with the oath of office required by section 3331 of this title an affidavit that neither he nor anyone acting in his behalf has given, transferred, promised, or paid any consideration for or in the expectation or hope of receiving assistance in securing the appointment.

5 U.S.C. § 3332.

family members.  Assuming, arguendo, that the appellants could show an infringement of their freedom of association, that showing would not complete the analysis.  A grand jury subpoena will be enforced despite a First Amendment challenge if the government can demonstrate a compelling interest in and a sufficient nexus between the information sought and the subject matter of its investigation.  <u>In re Faltico</u>, 561 F.2d 109, 111 (8th Cir. 1977).  We agree with the district court's finding that the OIC met its burden in this case.[13]  Therefore, the First Amendment challenge to the subpoenas fails.  See <u>In re Grand Jury Proceeding</u>, 842 F.2d 1229, 1236 (11th Cir. 1988); <u>Glass v. Heyd</u>, 457 F.2d 562, 564-65 (5th Cir. 1972).  We have considered the remainder of appellants' arguments and find them to be without merit.

## III.  CONCLUSION

Having found that appellants' compliance with the subpoenas here at issue did not moot their appeal, we nonetheless find that the district court correctly refused to quash the subpoenas.  Accordingly, we affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[13]Furthermore, absent "unusual circumstances," the First Amendment rarely offers protection from a duty to testify before a grand jury.  <u>United States v. Weinberg</u>, 439 F.2d 743, 748 (9th Cir. 1971); <u>see also</u> <u>Branzburg v. Hayes</u>, 408 U.S. 665, 682 (1972) ("[c]itizens generally are not constitutionally immune from grand jury subpoenas").