# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3523

_____

| | | |
|---|---|---|
| In the Matter of Arbitration Between, | * | |
| | * | |
| Security Life Insurance Company | * | |
| of America; Congress Life Insurance | * | |
| Company; | * | |
| | * | |
| Appellees, | * | |
| | * | |
| and | * | |
| | * | |
| Duncanson & Holt, Inc.; The Multiple | * | |
| Employers Trust Quota Share Line Slip; | * | |
| | * | Appeal from the United States |
| - - - - - - - - - - - - - | * | District Court for the |
| | * | District of Minnesota. |
| Transamerica Occidental Life | * | |
| Insurance Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 13, 2000

Filed: October 2, 2000

_____

Before HANSEN and HEANEY, Circuit Judges, and MILLS[1], District Judge.

_____

[1]The Honorable Richard Mills, United States District Judge, for the Central District of Illinois, sitting by designation.

_____

HEANEY, Circuit Judge.

Transamerica Occidental Life Insurance Company (Transamerica) appeals the district court's order concerning the enforcement of a subpoena issued by an arbitration panel pursuant to § 7 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2000). We affirm in part and dismiss in part.

## I. BACKGROUND

Security Life Insurance Company (Security) is a small Minnesota insurance company that underwrites health and life insurance in 41 states. In July 1992, Security launched a new group health insurance product. Because it lacked sufficient resources to sell the product without reinsurance, Security entered into a reinsurance contract (or "Treaty") with a group of seven major insurers, among them Transamerica.

The reinsurance contract was managed by Duncanson & Holt (D&H), and provided that the reinsurers would assume 85% of the risk of Security's policies in exchange for 85% of the premiums. The reinsurers also agreed to assume 85% of all loss adjustment expenses, including legal fees incurred in the investigation or defense of all claims. This obligation included "extra-contractual" items such as "punitive, exemplary, compensatory, or consequential damages." (App. at 25-27.) The reinsurers also agreed to assume 85% of liability for "alleged or actual bad faith or negligence" in handling health insurance claims, provided Security counseled with and obtained the concurrence of D&H "with respect to the actions giving rise to the extra contractual obligation." (App. at 27.)

Security later lost a $14 million judgment in a Georgia state court. See Clark v. Security Life Ins. Co. of America, 509 S.E.2d 602, 603 (Ga. 1998). D&H and the

2

reinsurers refused to acknowledge liability for their share of the <u>Clark</u> judgment and related liabilities. They also refused to pay their share of expenses related to four similar cases. According to D&H and the reinsurers, Security failed to honor the "counsel and concur" portion of the reinsurance contract. Security asserts that it abided by this requirement.

The reinsurance contract contained the following provision regarding arbitration of disputes:

> [I]f any dispute shall arise between [Security] and [the reinsurers] with reference to the interpretation of this Contract or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Contract, such dispute, upon written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after the receipt of written notice from the other party requesting it to do so, the requesting party may appoint two arbitrators. If the two arbitrators fail to agree in the selection of a third arbitrator within thirty (30) days of their appointment, each of them shall name two, or whom the other shall decline one and the decision shall be made by drawing lots.

(App. at 29-30.)

Security demanded arbitration on its alleged failure to counsel and concur, and addressed its request to D&H, including its designation of an arbitrator. D&H designated a second arbitrator within the 30-day period. The two arbitrators selected a third. Transamerica took the position that it was not a party to the arbitration, insisting that the counsel-and-concur dispute was not arbitrable, and that in any event it was entitled to arbitrate the dispute in a separate proceeding against it alone.

3

In April 1999, Security petitioned the arbitration panel for a subpoena duces tecum, which it issued to Transamerica at its offices in Los Angeles. The subpoena required Transamerica to produce documents and to provide the testimony of a certain employee. Security's explanation as to what it hoped to learn from the witness is complex. According to Security, in January 1996, the reinsurers--including a representative from Transamerica--met to discuss the <u>Clark</u> case. The reinsurers instructed D&H to deny coverage. However, in the interim, the <u>Clark</u> plaintiffs amended their complaint to name the reinsurers as unsued co-conspirators. Rather than deny coverage, as the reinsurers instructed, D&H reserved the reinsurers' rights with respect to the case. Security thus sought the subpoenaed information to assist it in proving "at the arbitration hearing that if it had known that the Reinsurers intended to deny coverage, it would have settled with the <u>Clark</u> plaintiffs and cooperated against the Reinsurers. The Reinsurers intentionally deceived Security Life as to their intent to deny coverage in order to keep Security Life litigating as their surrogate, thereby protecting their own interests at the expense of Security Life." (Br. at 29 (citation omitted).)

Transamerica, however, refused to respond to the subpoena, contending that it was not a party to the arbitration, and the arbitration panel thus had no authority under the Federal Arbitration Act (FAA) to issue the subpoena. In May 1999, Security petitioned the district court for the District of Minnesota to compel Transamerica to comply with the subpoena, or alternatively to compel Transamerica to participate in the arbitration proceedings. The district court referred the matter to a magistrate.

The magistrate noted that section 7 of the FAA (9 U.S.C. § 7) provides that the district court for the district in which the arbitrator sits may compel attendance or punish for contempt in the same manner provided by law for securing the attendance of witnesses in federal court:

4

The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7. The court noted Transamerica's argument that the court's power to enforce a subpoena under § 7 was limited by Federal Rule of Civil Procedure 45(b)(2). Under Rule 45(b)(2), a subpoena "may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena." Transamerica's Los Angeles office was far outside the 100-mile reach of the federal court in Minnesota, where the arbitration was to take place.

The magistrate resolved the issue by referring to Amgen Inc. v. Kidney Center of Del. County, Ltd., 879 F. Supp. 878 (N.D. Ill. 1995). Faced with a similar conundrum, the Amgen court reasoned that the federal policy in favor of arbitration required that the subpoena power of an arbitrator under the FAA be enforced. Accordingly, the Amgen court concluded that under Rule 45(a)(3)(B), the petitioner's attorney, as an officer of the court, could be directed to issue and sign the subpoena on

behalf of the court for the district in which the deposition or production was compelled by the subpoena. Id. at 882-83. The magistrate therefore directed Security's attorney to issue a subpoena to Transamerica. Transamerica appealed to the district court, which found the magistrate's order neither clearly erroneous nor contrary to law. Transamerica appeals to this court.

In the instant appeal, Transamerica argues (1) § 7 of the FAA does not authorize prehearing deposition subpoenas; (2) the arbitration panel lacked authority to issue a subpoena to be served in California; (3) the Minnesota court lacked authority to instruct Security's attorney to issue a subpoena of the California court; (4) Security failed to show the materiality of the information it sought from Transamerica, and thus the district court should have refused to compel compliance with the subpoena; (5) the district court's order is an impermissible advisory opinion; and (6) the subpoena issued by the arbitration panel was never properly served because Security failed to tender a witness fee.[2]

In response, Security argues (1) Transamerica is a party to the underlying arbitration and can therefore be compelled to provide discovery; (2) the district court properly devised a procedure that allowed it to enforce the subpoena; (3) the district court's order was not an improper advisory opinion; (4) even if Transamerica is not a party to the underlying arbitration it could be compelled to provide discovery anyway; and (5) the relevancy of Security's discovery is a matter entrusted to the arbitration

_____

[2]Meanwhile, in July 1999, Security obtained a subpoena from the district court in California, which was served on Transamerica in accordance with the magistrate's order, including a witness fee. Transamerica failed to appear, and Security moved the California court to hold Transamerica in contempt. After briefing and argument, Transamerica was held in contempt. Transamerica thereafter complied with the court's order, but appealed to Ninth Circuit. The appeal from the contempt order has not yet been decided.

panel, and in any event the discovery sought is relevant.  We affirm in part and dismiss in part.

## II. DISCUSSION

As an initial matter, we are obligated to examine whether Transamerica's compliance with the subpoena has mooted this appeal.  Federal courts are not empowered "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it."  Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)).  If, while an appeal is pending, an event occurs that eliminates our ability to provide the prevailing party any effectual relief whatever, we must dismiss the appeal as moot.  See In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996).  However, our continued jurisdiction does not depend upon being able to provide complete relief; if there is some means by which we can effectuate a partial remedy, this case remains a live controversy.  See Church of Scientology, 506 U.S. at 13; In re Grand Jury Subpoenas, 78 F.3d at 1310-11.

In Church of Scientology, the Court applied this partial-relief doctrine to conclude that compliance with a subpoena did not moot an appeal where appellant had a continuing possessory interest in audio tapes that it had produced for the Internal Revenue Service:

> While a court may not be able to return the parties to the status quo ante--there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes--a court can fashion some form of meaningful relief in circumstances such as these.  Taxpayers have an obvious possessory interest in their records.  When the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the

7

records. Moreover, even if the Government retains only copies of the disputed materials, a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy.

506 U.S. at 12-13.

Similarly, we believe that Transamerica has a sufficient interest in maintaining the secrecy of the documents in question that it is possible for this appeal to lead to meaningful relief in the form of the return of those documents or copies thereof. However, Transamerica's challenge to the district court's order compelling attendance of its employee at a pre-hearing deposition has been mooted by its compliance with the California court's subpoena. See In re Grand Jury Proceedings, 142 F.3d 1416, 1422 (11th Cir. 1998) ("Physical property can be retrieved; words, once uttered, cannot."); Office of Thrift Supervision v. Dobbs, 931 F.2d 956, 957-59 (D.C. Cir. 1991). We therefore dismiss as moot that portion of Transamerica's appeal that concerns the enforcement of the panel's subpoena of Transamerica's employee.

We now consider the merits of the remainder of this appeal. First, we address Transamerica's contention that the arbitration panel's subpoena was not authorized by the FAA. Section 7 explicitly grants arbitrators authority to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." It does not, however, explicitly authorize the arbitration panel to require the production of documents for inspection by a party.

Although the efficient resolution of disputes through arbitration necessarily entails a limited discovery process, we believe this interest in efficiency is furthered by permitting a party to review and digest relevant documentary evidence prior to the arbitration hearing. We thus hold that implicit in an arbitration panel's power to

8

subpoena relevant documents for production at a hearing is the power to order the production of relevant documents for review by a party prior to the hearing.

We believe the panel's exercise of this implicit power was proper whether or not Transamerica is ultimately determined to be a party to the arbitration. While the parties hotly dispute Transamerica's right to a separate arbitration proceeding, we conclude it is unnecessary for us to resolve the issue.[3] Transamerica is not a mere bystander pulled into this matter arbitrarily, but is a party to the contract that is the root of the dispute, and is therefore integrally related to the underlying arbitration, if not an actual party. Cf. Meadows Indem. Co. v. Nutmeg Ins. Co., 157 F.R.D. 42, 45 (M.D. Tenn. 1994) (holding arbitration panel may order non-party's production of documents prior to hearing where non-party was nevertheless "intricately related to the parties involved in the arbitration and are not mere third-parties who have been pulled into this matter arbitrarily").

Transamerica argues the panel's subpoena was nevertheless defective because the subpoena was signed only by the umpire of the panel in question, and because Security failed to tender required witness fees upon serving the panel's subpoena. However, the signature argument appeared only in Transamerica's reply brief, and we do not consider arguments raised for the first time in a reply brief. See Myre v. State of Iowa, 53 F.3d 199, 201 (8th Cir. 1995). Moreover, as discussed above, Security's alleged failure to tender witness fees has been mooted by Transamerica's compliance with the subpoena.

Transamerica further contends that § 7 required the district court to make an independent assessment of the materiality of the information sought by Security before acting to compel compliance with the panel's subpoena. According to Transamerica,

---

[3]We believe the proper route for this issue to reach the courts, if necessary, is through a proceeding to confirm or vacate the panel's award.

9

this requirement is contained in the language of § 7 itself, because the statute directs a district court to compel compliance with a panel's subpoena "in a proper case." We disagree. The language quoted by Transamerica refers only to a panel's power to require a witness subpoenaed under § 7 to bring along documents. Transamerica's attempt to transform this language into a requirement that the district court second-guess the panel's judgment is thus misleading at best. Although there is some support for imposing such a requirement on the district court, see Oceanic Transport Corp. v. Alcoa Steamship Co., 129 F.Supp. 160, 161 (S.D.N.Y. 1954), we believe it is antithetical to the well-recognized federal policy favoring arbitration, and compromises the panel's presumed expertise in the matter at hand. We therefore decline to saddle the courts of this circuit with such a burden.

Transamerica's final argument concerns the interplay between § 7 and the 100-mile territorial limit contained in Federal Rule of Civil Procedure 45(b)(2). Section 7 provides that a panel's subpoena must be "served in the same manner as subpoenas to appear and testify before the court." Rule 45(b)(2) provides, with limited exceptions that do not apply here,

> a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena.

Transamerica contends that Rule 45(b)(2) limits the arbitration panel's subpoena power, and thus the panel's subpoena of Transamerica was invalid. Moreover, Transamerica argues that the district court erred in directing counsel for Security to follow the procedure employed in Amgen. This is a thorny question indeed, presenting what may be a serious problem in the enforcement of witness subpoenas under the

10

FAA. However, as the only live controversy in this case concerns the panel's subpoena of documents, we must reserve the question for another day. Our consideration is limited to whether the panel properly issued, and the district court properly enforced, the subpoena of documents.

Whether or not Transamerica is correct in insisting that a subpoena for witness testimony must comply with Rule 45, we do not believe an order for the production of documents requires compliance with Rule 45(b)(2)'s territorial limit. This is because the burden of producing documents need not increase appreciably with an increase in the distance those documents must travel.

## III. CONCLUSION

Mindful of the limits of our jurisdiction in this case, we express no opinion about the unusual procedure followed by the district court for the enforcement of the panel's subpoena of Transamerica's employee. However, in light of our conclusion that there is no territorial limitation on the panel's authority to order the production of documents, it is apparent that Transamerica suffered no prejudice as a result of the district court's enforcement of the portion of the panel's subpoena ordering the production of documents. This suffices to resolve the case before us.

Accordingly, we dismiss that portion of the appeal concerning the district court's enforcement of the panel subpoena of witness testimony, and affirm the district court with respect to its enforcement of the panel's order for the production of documents.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

11