**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JANE BOYD,
*Defendant-Appellant.*

No. 19-55585

D.C. No.
2:18-cv-00803-
MWF-JEM

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted September 1, 2020
Pasadena, California

Filed March 24, 2021

Before: Sandra S. Ikuta and Mark J. Bennett, Circuit
Judges, and Douglas Woodlock,* District Judge.

Opinion by Judge Bennett;
Dissent by Judge Ikuta

---

*The Honorable Douglas P. Woodlock, United States District Judge
for the District of Massachusetts, sitting by designation.

## SUMMARY**

# Tax

The panel reversed the district court's judgment and remanded for further proceedings in an action by the United States for tax penalties and interest involving a taxpayer's failure to report foreign financial accounts.

Taxpayer had a financial interest in multiple financial accounts in the United Kingdom. She received interest and dividends from these accounts but did not report the interest and dividends on her 2010 federal income tax return, or disclose the account to the Internal Revenue Service. In 2012, taxpayer participated in the Internal Revenue Service's Offshore Voluntary Disclosure Program and submitted a Report of Foreign Bank and Financial Accounts (FBAR) listing her fourteen foreign accounts for 2010, and amended that year's tax return to include the interest and dividends from those accounts. The IRS concluded that taxpayer had committed thirteen non-willful violations of the reporting requirements under 31 U.S.C. § 5314—one for each account she failed to timely report for 2010. The United States then sued taxpayer for civil penalties under § 5321(a)(5)(A).

Examining the statutory and regulatory scheme for reporting a relationship with a foreign financial agency under § 5314, the panel held that § 5321(a)(5)(A) authorizes the IRS to impose only one non-willful penalty when an

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

untimely, but accurate, FBAR is filed, no matter the number of accounts.

Judge Ikuta dissented because the panel's interpretation of the statutes is contrary to the language of the relevant statutes and regulations, and is implausible in context. In Judge Ikuta's view, the majority interprets the statutes and regulations in a manner that unfairly favors the tax evader.

## COUNSEL

A. Lavar Taylor (argued) and Jonathan T. Amitrano, Law Offices of A. Lavar Taylor LLP, Santa Ana, California, for Defendant-Appellant.

Francesca Ugolini (argued), Deborah K. Snyder, and Kathleen E. Lyon, Attorneys; Richard E. Zuckerman, Principal Deputy Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellee.

David Michaels, DTMtax, Placentia, California, for Amici Curiae Laxman, Jashu, Hiten, and Anita Patel.

Caroline D. Ciraolo and Caroline Rule, Kostelanetz & Fink LLP, Washington, D.C., for Amicus Curiae American College of Tax Counsel.

**OPINION**

BENNETT, Circuit Judge:

Defendant Jane Boyd did not timely file a Report of Foreign Bank and Financial Accounts form ("FBAR") disclosing her foreign financial accounts in the United Kingdom.[1]  The Internal Revenue Service ("IRS") found that she violated the reporting requirements of 31 U.S.C. § 5314 and imposed multiple penalties under 31 U.S.C. § 5321(a)(5)(A) based on her belated submission of a single FBAR.  The government sued in the district court seeking to obtain a judgment against Boyd in the amount of $47,279, plus additional late-payment penalties and interest for non-willful violations.  The parties cross moved for summary judgment.  The district court granted the government's motion, concluding that § 5321(a)(5)(A) authorized the government to impose multiple non-willful penalties—up to $10,000 for each foreign bank account that was required to be listed on the FBAR.  We reverse this judgment and conclude that § 5321(a)(5)(A) authorizes the IRS to impose only one non-willful penalty when an untimely, but accurate, FBAR is filed, no matter the number of accounts.

**I.**

The relevant facts are undisputed.  Jane Boyd, an American citizen, had a financial interest in fourteen

---

[1] The FBAR was due by June 30, 2011.  Boyd filed an accurate FBAR in October 2012 on the prescribed form, TD F 90-22.1.  A blank copy of Form TD F 90-22.1 as it appears in the Excerpts of Record, is attached as Appendix A to this opinion.  The parties do not dispute that this was the prescribed form at the time Boyd made her belated FBAR filing.  Appendix B to this opinion contains certain relevant statutes and regulations.

financial accounts in the United Kingdom with an aggregate balance in excess of $10,000. The amounts in these accounts significantly increased between 2009 and 2011 after her father died in 2009 and she deposited her inheritance. Boyd received interest and dividends from these accounts and did not report the interest and dividends on her 2010 federal income tax return or disclose the accounts to the IRS. In 2012, Boyd asked to participate in the IRS's Offshore Voluntary Disclosure Program—a program that allows taxpayers to voluntarily report undisclosed offshore financial accounts in exchange for predictable and uniform penalties. After the IRS accepted Boyd into the program, she submitted, in October 2012, an FBAR listing her fourteen foreign accounts for 2010 and amended her 2010 tax return to include the interest and dividends from these accounts.

Boyd was granted permission by the IRS to opt out of the program in 2014. The IRS then examined Boyd's income tax return and concluded that she committed thirteen FBAR violations—one violation for each account she failed to timely report for calendar year 2010.[2] The late-submitted FBAR was complete and accurate. The IRS concluded that Boyd's violations were non-willful, and it assessed a total penalty of $47,279. In 2018, the government sued Boyd seeking to obtain a judgment against her for the $47,279 plus additional late-payment penalties and interest.

Boyd argued before the district court that she had committed only one non-willful violation, not thirteen, and that the maximum penalty allowed by the statute for that

---

[2] The IRS determined that one of the accounts was used to fund several other accounts and therefore did not impose a separate penalty on the fourteenth account.

single non-willful violation was $10,000. The government contended that the relevant statutes and regulations authorized the IRS to assess one penalty for each non-reported account. The district court agreed with the government. Boyd timely appealed.

We have jurisdiction under 28 U.S.C. § 1291.

## II.

This case presents an issue of first impression for this court. We must decide whether 31 U.S.C. § 5321 authorizes the IRS to impose multiple non-willful penalties for the untimely filing of a single accurate FBAR that includes multiple foreign accounts.

Boyd argues that the statutory language does not support a separate penalty for each account she should have listed on the FBAR she failed to timely file. Rather, according to Boyd, the statutory and regulatory schemes provide that a non-willful, untimely but accurate FBAR filing constitutes a single violation subject to a maximum penalty of $10,000. Boyd also contends that the rule of lenity applies to statutes imposing penalties and, therefore, § 5321 should be construed strictly against the government.

The government argues that multiple non-willful violations may spring from a single late but accurate FBAR, because 31 U.S.C. § 5314 and its implementing regulations create reporting requirements that extend to each foreign account. In the government's view, Boyd's reading of § 5321 is incompatible with the statutory scheme as a whole, particularly when viewing the statute's "reasonable cause" exception and willful penalty provisions, both of which, the government claims, are directed to accounts and not the FBAR form.

We agree with Boyd. The statute, read with the regulations, authorizes a single non-willful penalty for the failure to file a timely FBAR. Accordingly, we reverse the district court and remand for further proceedings consistent with this opinion.

## A.

We review de novo both the "district court's grant of summary judgment," *Bradley v. United States*, 817 F.2d 1400, 1402 (9th Cir. 1987), and its interpretation of the statute, *see United States v. Town of Colo. City*, 935 F.3d 804, 807 (9th Cir. 2019). Summary judgment here is appropriate if there is "no genuine dispute as to any material fact and the [government] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When we interpret a statute, our "first step . . . is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If so, the "inquiry must cease," provided "the statutory scheme is coherent and consistent." *Id.* (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). We determine "[t]he plainness or ambiguity of [the] statutory language . . . by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341; *see also Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (noting that it is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000))). Thus, in addition to looking at the statutory text, we analyze the statutory and regulatory framework as a whole and examine the meaning of the statutory provisions "with a view to their

place" in that framework. *Util. Air Regul. Grp.*, 573 U.S. at 320.

## B.

Section 5321 authorizes the government to "impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314." 31 U.S.C. § 5321(a)(5)(A). Section 5321 establishes two types of civil penalties depending on whether the violation was willful or non-willful. *See id.* § 5321(a)(5). The maximum penalty for a non-willful violation "shall not exceed $10,000." *Id.* § 5321(a)(5)(B)(i).[3]   The maximum penalty for willful violations is the greater of $100,000 or "50 percent of the amount determined under subparagraph (D)." *Id.* § 5321(a)(5)(C). Subparagraph (D) provides that for "a violation involving a transaction," the relevant amount is "the amount of the transaction," *id.* § 5321(a)(5)(D)(i), while for "a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account," the relevant amount is "the balance in the account at the time of the violation," *id.* § 5321(a)(5)(D)(ii).   The statute thus penalizes willful violations involving misreporting or non-reporting of account information up to the greater of 50 percent of the account balance, or $100,000.[4]

---

[3] The statute also recognizes a reasonable cause exception for non-willful violations: "No penalty shall be imposed" if a violation was "due to reasonable cause" and "the amount of the transaction or the balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B)(ii).

[4] So, for example, a penalty of up to $500,000 may be imposed for a willful failure to report an account with a balance of $1,000,000, and a

The salient question is:  Did Boyd commit one non-willful violation for her single failure to timely file the FBAR, or did she commit thirteen (or fourteen) non-willful violations for her single failure to timely file an FBAR listing her fourteen relevant accounts?  We turn to the applicable statutes and implementing regulations to answer this question.

Section 5321(a)(5)(A) provides for imposition of "a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314."  Congress did not define "provision."  We therefore apply the ordinary and plain meaning of that word.  *See Metro One Telecomms., Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012) ("[I]n the absence of an indication to the contrary, words in a statute are assumed to bear their ordinary, contemporary, common meaning." (quoting *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997))).  A provision is "an article or clause (as in a contract) that introduces a condition" or "a condition, requirement, or item specified in a legal instrument." *Provision*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/provision (last visited Nov. 9, 2020) (defining provision as "proviso" or "stipulation").[5]

Section 5314 contains several provisions, including:

> (a) Considering the need to avoid impeding
> or controlling the export or import of

---

penalty of up to $100,000 may be imposed for a willful failure to report an account with a balance of $150,000.

[5] To determine "the plain meaning of terms, we may consult the definitions of those terms in popular dictionaries." *Metro One Telecomms., Inc.*, 704 F.3d at 1061.

monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, *file reports*, or keep records and file reports, when the resident, *citizen*, or person makes a transaction or *maintains a relation* for any person *with a foreign financial agency*. The records and *reports shall contain the following information* in the way and to the extent the Secretary prescribes:

(1) the identity and address of participants in a transaction or relationship.

(2) the legal capacity in which a participant is acting.

(3) the identity of real parties in interest.

(4) a description of the transaction.

31 U.S.C. § 5314(a) (emphases added). As emphasized above, § 5314(a) contains two separate and relevant provisions: (1) filing a report when maintaining a relationship with a foreign financial agency, and (2) ensuring the filed report contains specified information as prescribed by the Secretary. We next consider the relevant regulations, as they prescribe how these provisions may be violated.

The Supreme Court in *California Bankers Association v. Shultz*, 416 U.S. 21 (1974) explained that "the Act's civil and

criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *Id.* at 26. Consequently, our focus must be on the directives the Secretary had in place at the time of Boyd's reporting of her foreign financial accounts. There are two relevant regulations. The first requires a citizen (like Boyd) to report financial interests in foreign accounts "for each year in which such relationship exists and [to] provide such information as shall be specified *in a reporting form* prescribed under 31 U.S.C. 5314 . . . . The *form* prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts [the FBAR] . . . ." 31 C.F.R. § 1010.350(a) (emphases added). The second requires that the FBAR "be filed . . . on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." *Id.* § 1010.306(c).[6] Thus, § 1010.350 (and the FBAR form) describes what information must be disclosed in the report prescribed by § 5314—the FBAR—while § 1010.306 imposes a deadline for when the FBAR must be filed.

Because Boyd's late-filed FBAR was accurate, she could not have violated § 1010.350—the regulation that delineates the content of the report (the FBAR) required by § 5314. Boyd violated only § 1010.306. Her FBAR for calendar year 2010 was due by June 30, 2011, and she did not file it until 2012. Thus, we hold that, under the statutory and regulatory

---

[6] The requirement to file an FBAR does not turn on the number of accounts, only on the aggregate value in those accounts. And only one yearly FBAR is required, whether there are twenty accounts with an aggregate value of $10,000, or one account with a value of $10,000,000.

scheme, Boyd committed a single non-willful violation—the failure to timely file the FBAR.[7]

We are unpersuaded by the government's arguments that Boyd committed multiple violations. First, the government's reliance on § 1010.350(a) to support that Boyd committed multiple violations is misplaced because, as discussed above, Boyd did not violate § 1010.350(a).[8] To the contrary, she disclosed all the information called for by Form TD F 90-22.1.

Second, the government argues that the use of the word "any" before "violation" in § 5321(a)(5)(A) suggests "that more than one violation may occur with respect to a particular report (§ 5314(a)) required to be filed." We

---

[7] The dissent accuses us of misquoting and misreading § 1010.306. Dissent at 25 n.6, 27–28. The dissent is wrong. Subsection (c) of § 1010.306 states that "[r]eports required to be filed by § 1010.350 shall be filed . . . on or before June 30 of each calendar year." The following subsection (d) makes clear that such reports *must* be made using the prescribed form. *See* 31 C.F.R. § 1010.306(d) ("Reports required by . . . § 1010.350 . . . *shall be filed on forms* prescribed by the Secretary." (emphasis added)). Because a taxpayer must make the reports on the FBAR, it is the FBAR that must be filed by June 30. *See United States v. Bittner*, 469 F. Supp. 3d 709, 718 (E.D. Tex. 2020) ("[I]t is the failure to file an annual FBAR that is the violation contemplated and that triggers the civil penalty provisions of § 5321."), *appeal docketed*, No. 20-40612 (5th Cir. Sept. 18, 2020); *see also United States v. Kaufman*, No. 3:18-CV-00787 (KAD), 2021 WL 83478, at *9 (D. Conn. Jan. 11, 2021) ("FBARs must be filed on or before June 30 . . . ." (internal quotation mark and citation omitted)).

[8] The regulations and FBAR require a person to report much more information than the number of accounts. Taken to its "logical" conclusion, the government's argument could permit many more non-willful violations than those tied just to the number of accounts that should have been listed on an FBAR that was not timely filed.

disagree.    The language in § 5321(a)(5)(A) that "*any* violation of . . . any provision of section 5314" simply refers to the relevant regulations that prescribe how the provisions in § 5314 may be violated.  As discussed above, under the relevant regulations, Boyd committed one violation.  And even if the language could support separate non-willful penalties in a different factual scenario—like if an individual first failed to timely file an FBAR, and then filed an inaccurate one—we are not presented with those facts.  Boyd failed to timely file an FBAR and later filed an accurate one.[9]

In sum, under the statutory and regulatory scheme, Boyd's conduct amounts to one violation, which the IRS determined was non-willful.    Section 5321(a)(5)(B)(i) authorizes one penalty per non-willful violation of § 5314, not to exceed $10,000.  Because Boyd committed a single non-willful violation, the IRS may impose only one penalty not to exceed $10,000.

## III.

Despite the clear language of § 5321(a)(5)(B)(i), the government argues that the amount of the penalty can be assessed on a per-account basis based on the statutory

---

[9] The district court cases that the government cites in support of its position, *see United States v. Ott*, No. 18-cv-12174, 2019 WL 3714491 (E.D. Mich. Aug. 7, 2019); *United States v. Gardner*, No. 2:18-cv-03536-CAS-E, 2019 WL 1767120 (C.D. Cal. Apr. 22, 2019), are inapposite because those courts did not directly address the question raised here—whether a person commits multiple violations equivalent to the number of accounts reported on an untimely but accurate FBAR.  We further note that two district court cases, relied upon by Boyd, postdating the decision we now review, have directly rejected the outcome reached below in this case.  *See Kaufman*, 2021 WL 83478, at *8–11; *Bittner*, 469 F. Supp. 3d at 718–26.

scheme as a whole and legislative intent. We are unpersuaded.

Before 2004, § 5321 only penalized willful violations. *See* 31 U.S.C. § 5321(a)(5) (2004). Congress amended the statute to allow for non-willful penalties and did so by establishing a new generally applicable penalty provision, 31 U.S.C. § 5321(a)(5)(B), while placing willful violations and the associated penalty provision in different subparagraphs, 31 U.S.C. § 5321(a)(5)(C)–(D). *See* American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821(a), 118 Stat. 1418, 1586. The new penalty provision in § 5321(a)(5)(B)(i) does not expressly authorize (or forbid) multiple non-willful penalties on a per account basis for a late-filed but accurate FBAR—"[T]he amount of any civil penalty imposed [for a non-willful violation of any provision of § 5314] . . . shall not exceed $10,000." 31 U.S.C. § 5321(a)(5)(B)(i). The willful-violation provisions, on the other hand, are not silent as to multiple account penalties; they state that a penalty amount is determined "in the case of a violation involving a transaction, [by] the amount of the transaction, or . . . in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, [based on] the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(D)(i)–(ii).

The government contends that the *willful* violation penalty provision, § 5321(a)(5)(D)(ii)—which explicitly bases the penalty amount on the balance of any account willfully misreported or non-reported—is evidence that the non-willful violation penalty provision also must base the penalty amount on the number of accounts misreported or non-reported, given that Congress intended to treat the two penalty frameworks identically. In the government's view,

the 2004 amendments merely extended the existing penalties authorized by § 5321 to non-willful violations. We find the text Congress adopted did not do so.

"Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015). Thus, we presume that Congress purposely excluded the per-account language from the non-willful penalty provision in subparagraph (B)(i) because it included such language in the willful penalty provision in subparagraph (D). *See United States v. McDuffy*, 890 F.3d 796, 800 (9th Cir. 2018) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting *Dean v. United States*, 556 U.S. 568, 573 (2009))), *cert. denied*, 139 S. Ct. 845 (2019); *see also Fortney v. United States*, 59 F.3d 117, 120 (9th Cir. 1995) (applying this presumption to the Internal Revenue Code). Indeed, Congress could very easily have written, using the language of the willful violations penalty provision, something like: "Except as provided in subparagraph (C) [dealing with willful violations], the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000 for each failure to timely report the existence of an account or any identifying information required to be provided with respect to an account." Instead, Congress wrote the statute it did: "Except as provided in subparagraph (C) [dealing with willful violations], the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000." 31 U.S.C. § 5321(a)(5)(B)(i). We decline to read into the statute language that Congress wrote in the willful penalty

provision but omitted from the non-willful penalty provision.[10]

The government also contends that the per-account language in the reasonable cause exception to non-willful violations (which Congress created with the same set of amendments that established non-willful violations) supports its interpretation. But contrary to the government's argument, the inclusion of per-account language in the reasonable cause exception supports that Congress *intentionally* omitted per-account language from the non-willful penalty provision. Since we know Congress was aware of that language during the amendment process and left it out of the non-willful penalty provision, we think the better view is that Congress acted intentionally when it drafted the non-willful civil penalty with no reference to "account" or "balance in the account." *See MacLean*, 574 U.S. at 391; *see also Bittner*, 469 F. Supp. 3d at 719; *Kaufman*, 2021 WL 83478, at *9 (agreeing with *Bittner* "that Congress intentionally omitted reference to 'account' or

---

[10] The dissent erroneously claims that we "defin[ed] the word 'violation' differently when it is used in" § 5321(a)(5)(B) than when it is used in subparagraph (D). Dissent at 28–30. We have not done so. We have simply given effect to Congress's intent to formulate two different schemes of punishment for willful and non-willful violations. *See Kaufman*, 2021 WL 83478, at *10 ("Concluding that the manner of calculating the statutory cap for a willful violation is different than for a non-willful violation does not mean that the conduct underlying the violation differs. Under both scenarios, the violation flows from the failure to file a timely and accurate FBAR. The only difference is that the manner for calculating the statutory cap for penalties for willful violations involves an analysis that includes consideration of the balance in the accounts, while no such analysis is required for non-willful violations."). The dissent on the other hand ignores the import of Congress's explicit choice to omit the per-account language from the non-willful penalty provision in subparagraph (B).

'balance in the account' when drafting the penalty provision for non-willful violations").

The government contends that the use of the word "any" before "civil penalty" in § 5321(a)(5)(B)(i) suggests that "multiple potential items are being referenced."  The "*any* civil penalty imposed under subparagraph (A)" language in § 5321(a)(5)(B)(i) simply refers to subsection (a)(5)(A), which provides that the Secretary "may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314."  This does not suggest the possibility of multiple non-willful penalties on a per-account basis for the single failure to file a timely FBAR.[11]

---

[11] The American College of Tax Counsel, appearing before us as *amicus curiae*, points out that, in 2014, the IRS provided taxpayers its view of the difference between willful and non-willful penalties:

> Separately, taxpayers with foreign accounts whose aggregate value exceeds $10,000 any time during the year must file a[n FBAR] . . . .  The FBAR is not filed with a federal tax return and must be filed by June 30 each year.

> . . . .

> *For the FBAR, the penalty may be up to $10,000, if the failure to file is non-willful*; if willful, however, the penalty is up to the greater of $100,000 or 50 percent of account balances; criminal penalties may also apply.

Fact Sheet, *Offshore Income and Filing Information for Taxpayers with Offshore Accounts*, FS-2014-7 (June 2014) (hereinafter, "2014 Fact Sheet") (emphasis added), *available at* https://www.irs.gov/newsroom/

The non-willful penalty provision allows the IRS to assess one penalty not to exceed $10,000 per violation, and nothing in the statute or regulations suggests that the penalty may be calculated on a per-account basis for a single failure to file a timely FBAR that is otherwise accurate.  Thus, the IRS may impose only one penalty not to exceed $10,000 for Boyd's single failure to file a timely FBAR.

## IV.

Starting with the language of the statute and the regulations as a whole, and using normal tools of statutory construction, we have no difficulty concluding that the government cannot assess multiple penalties for the non-willful violation here—failing to timely file an FBAR.  But

---

offshore-income-and-filing-information-for-taxpayers-with-offshore-accounts (last visited Nov. 9, 2020).

And even here, at the same time the IRS was telling Boyd she was subject to *multiple* non-willful penalties, it sent her a form letter (consistent with the 2014 Fact Sheet) appearing to state the opposite. The letter explained that the IRS was "proposing a penalty" and included two checked boxes.  The first box explained that the IRS was "proposing the assessment of a penalty under 31 U.S.C. § 5321(a)(5) for failing to meet the filing requirements of 31 U.S.C. § 5314.  For each calendar year, any U.S. person having one or more foreign accounts with maximum balances aggregating over $10,000 is required to file [the FBAR] with the Internal Revenue Service by June 30th of the following year."  The second box explained that "*[f]or the failure to file [the FBAR] due on or after June 30, 2005, the penalty cannot exceed $10,000.*" (emphasis added).

No one cited this letter in their briefs, and it does not "estop" the government or the IRS.  We cite it and the 2014 Fact Sheet for two purposes—first for their logical read of the statute and regulations, and second for the fact that they come from the IRS, which now urges upon us a different and far less logical read.

even if the statute were ambiguous in its treatment of non-willful penalties, we must strictly construe a "tax provision which imposes a penalty . . . ; [it] cannot be assessed unless the words of the provision plainly impose it." *Bradley*, 817 F.2d at 1402–03. While the rule of lenity ordinarily applies only to criminal statutes, *see Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16 (2011), our circuit strictly construes tax penalty provisions independent of the rule of lenity. The statute in *Bradley* was not a penal statute, and we did not discuss the rule of lenity. Nevertheless, we still strictly construed the statute, which authorized a maximum civil penalty of $500 for the filing of frivolous returns. *Bradley*, 817 F.2d at 1402. We are bound by *Bradley*'s statement of the law.[12]

Even if the government's reading of the statutory scheme were reasonable (and we think it is not), that reading does not arise from the plain words of either the statute or the regulations. And Boyd's reading, even if it is not compelled, is reasonable. Thus, the rule we enunciated in *Bradley* would come into play, and we would strictly construe the statute against the government. The district court found the rule inapplicable because "that is not exactly the issue here—there's no question that the civil penalty exists; that's the basis for this dispute." *United States v. Boyd*, No. 18-803-MWF (JEMx), 2019 WL 1976472, at *5 (C.D. Cal. Apr. 23, 2019). We disagree. The precise issue here is not whether the statute authorizes a non-willful penalty; it is whether the statute plainly authorizes a non-willful penalty

---

[12] We note that though Boyd raised *Bradley* in her opening brief, the government did not discuss the case in its answering brief. We also note that the United States Tax Court has held that the rule of lenity applies to tax laws that impose a monetary penalty. *Mohamed v. Comm'r*, T.C. Memo. 2013-255, 2013 WL 5988943, at *10–11.

for *each* account under the facts here, and it does not.[13] Thus, the government's position would also be unavailing under *Bradley*.

## V.

Boyd was required to file one FBAR for the 2010 calendar year by June 30, 2011. She failed to do so. Accordingly, she committed one violation, and the IRS concluded that her violation was non-willful. Thus, the maximum penalty for such a violation "shall not exceed $10,000."

### REVERSED and REMANDED.

IKUTA, Circuit Judge, dissenting:

When the Bank Secrecy Act[1] was enacted by Congress in 1970, it was a cutting edge vehicle to combat "a serious

---

[13] Though the government did not discuss *Bradley*, it did discuss *Comm'r v. Acker*, 361 U.S. 87 (1959), which was also cited by Boyd in her opening brief. The government argued: "[T]he Supreme Court noted the established principle that 'one is not to be subjected to a penalty unless the words of the statute plainly impose it.' As the District Court held . . . , however, there is no dispute here that § 5321(a)(5) provides for *a* penalty." (emphasis added). We reject this "out of one, many" argument.

[1] The Bank Secrecy Act is the popular name for the Bank Records and Foreign Transactions Act, Pub. L. No. 91-508, 84 Stat. 1114. Title II of the Act was originally codified at 31 U.S.C. §§ 1051–1122. In 1982, these sections were re-enacted without substantive change as 31 U.S.C. §§ 5311 to 5322, with applicable regulations at 31 C.F.R. § 103.11 et seq.

and widespread use of foreign financial institutions, located in jurisdictions with strict laws of secrecy as to bank activity, for the purpose of violating or evading domestic criminal, tax, and regulatory enactments." *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 27 (1974). The use of foreign accounts led to the loss of "hundreds of millions in tax revenues," and had "debilitating effects" on the American economy. *Id.* at 28. Similar issues are facing law enforcement today. In recent years, Americans have poured billions of dollars into undeclared accounts in jurisdictions like Switzerland and the British Virgin Islands. *See, e.g.*, Laura Saunders, *The IRS Reels in a Whale of an Offshore Tax Cheat – and Goes for Another*, Wall St. J., Oct. 23, 2020.[2] In many cases, "an American puts assets into foreign trusts, companies, and other offshore accounts nominally owned by foreigners to make it look as though no tax is owed to the IRS." *Id.* Such "offshore structures are hard for the IRS to investigate if they're in countries without treaties or agreements easing the exchange of tax information." *Id.* The IRS has redoubled its efforts "to pierce the veil of bank secrecy." *Id.*

The Bank Secrecy Act gives the IRS multiple statutory tools for combating these offshore tax evasion techniques. *See Shultz*, 416 U.S. at 27. One tool that has remained essentially unchanged since 1970 is the power to impose penalties on Americans who fail to keep records and file reports on transactions or accounts with foreign financial agencies, *e.g.*, 31 U.S.C. §§ 5314, 5321. These reporting requirements and associated penalties deter taxpayers from hiding their offshore accounts and therefore "have a high

---

[2] Available at https://www.wsj.com/articles/the-irs-reels-in-a-whale-of-an-offshore-tax-cheatand-goes-for-another-11603445399.

degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311.

Instead of providing an evenhanded interpretation of these statutes, the majority strains to interpret them narrowly. The majority rejects the most natural reading of the statutory language, which requires Americans to report each foreign account and imposes a penalty for each failure to do so. Rather, the majority focuses on the *procedure* for complying with the law. Because the regulations direct taxpayers to aggregate their reports of foreign accounts on a single reporting form,[3] the majority concludes that it is the failure to provide the reporting form (not the failure to report the individual foreign financial accounts) that constitutes the statutory violation, and that the IRS may impose only single penalty for failure to provide the reporting form. Maj. at 11–12.

Because this interpretation is contrary to the language of the relevant statutes and regulations—as well as being implausible in context—I dissent.

I

The facts of this case are undisputed. From 2004 to 2011, Jane Boyd had a financial interest in multiple financial accounts in the United Kingdom. Boyd did not report these accounts to the IRS as required by law. After a state government discovered her foreign accounts, Boyd entered into the IRS's limited-amnesty program, which allowed persons to voluntarily report previously undisclosed

---

[3] Report of Foreign Bank and Financial Accounts (Form TD-F 90-22.1), frequently referred to as the FBAR (revised Jan. 2012), available at https://www.irs.gov/pub/irs-pdf/f90221.pdf.

offshore financial accounts to the IRS in exchange for lower penalties.  As part of her participation in this program, Boyd submitted her delinquent reports in October 2012.  For unknown reasons, Boyd subsequently opted out of the amnesty program, and so became subject to full assessment of penalties.  The IRS ruled that Boyd's failure to report her foreign accounts was not willful, and it assessed a penalty for each of thirteen unreported accounts for a total penalty of $47,279.  The government subsequently brought a civil action against her when she failed to pay the penalty amount. The district court granted summary judgment in favor of the government, and this appeal followed.

## II

On appeal, the only issue is whether the IRS may assess a penalty for Boyd's failure to file a report regarding each of the thirteen accounts she maintained in the United Kingdom. The language of the relevant statutes and regulations makes clear that the IRS can do so.[4]

The IRS assessed civil penalties against Boyd under 31 U.S.C. § 5321(a)(5)(A) for a violation of 31 U.S.C. § 5314.  As relevant here, § 5314(a) has both a substantive and procedural element.  As to the substantive element, § 5314(a) directs the Secretary of the Treasury to require a person to "file reports" when that person "makes a transaction with a foreign financial agency" or "maintains a relation . . . with a foreign financial agency."  Procedurally, the report must contain certain information "in the way and

---

[4] The text of the relevant statutes and regulations are attached as an appendix.

to the extent the Secretary prescribes."    31 U.S.C.
§ 5314(a).[5]

As required, the Secretary promulgated regulations to
implement the statute.  The relevant regulation, 31 C.F.R.
§ 1010.350(a), states that    "[e]ach United States person
having a . . . financial account in a foreign country [1] shall
report such relationship to the Commissioner of Internal
Revenue for each year in which such relationship exists *and*
[2] shall provide such information as shall be specified in a
reporting form prescribed under 31 U.S.C. 5314 to be filed
by such persons."    31 C.F.R. § 1010.350(a) (emphasis
added).  As this wording makes clear, the obligation to report
each account (as set out in the first clause of § 1010.350(a))
is independent of the obligation to file a reporting form (as
set out in the second clause of § 1010.350(a)).

The first clause of § 1010.350(a) sets out the reporting
obligation:  "[e]ach United States person having a financial
interest in, or signature or other authority over, a bank,
securities or other financial account in a foreign country"
must "report such relationship" to the IRS.  *Id.*  A person
must "report" a financial interest in a "financial account"
"for each year in which such relationship exists."  *Id.*

The second clause of § 1010.350(a) sets out a procedural
requirement:    that the person having the interest in the
foreign account must "provide such information as shall be
specified in a reporting form."  *Id.*

---

[5] The Secretary has delegated "[t]he authority to enforce the
provisions of 31 U.S.C. § 5314 and [its implementing regulations] . . . to
the Commissioner of Internal Revenue."  31 C.F.R. § 1010.810(g).

Section 1010.306 confirms that § 1010.350(a) implements two independent requirements. Section 1010.306(d) states that the "reports required to be filed" by § 1010.350 "shall be filed on forms prescribed by the Secretary." The "reports required to be filed" are distinct from the form that must be used for filing the reports. This interpretation is required by § 1010.306(e), which provides that "*[f]orms* to be used in making the *reports* required by" § 1010.350 "may be obtained from BSA E-Filing System." *Id.* § 1010.306(e) (emphasis added). Given that the reports are distinct from the applicable reporting forms, the requirement in § 1010.306(c) that "[r]eports required to be filed by § 1010.350 . . . shall be filed with FinCEN on or before June 30 of each calendar year," requires the specified United States person to file a report regarding each foreign account before June 30, and (as explained in § 1010.306(d)) must do so on the appropriate reporting form.[6]

Paragraph 5 of § 5321 sets out civil penalties and establishes both the mens rea and actus reus for a violation of the reporting requirements in § 5314. As to mens rea, a

---

[6] Thus, the majority is incorrect in stating that § 1010.306(c) "requires that the FBAR 'be filed . . . on or before June 30 of each calendar year . . . .'" Maj. at 11 (quoting § 1010.306(c)). The majority omits the text in § 1010.306(c) immediately preceding its quotation, which states that "*[r]eports required to be filed* by § 1010.350 shall be filed . . . on or before June 30." 31 C.F.R. § 1010.306(c) (emphasis added). Contrary to the majority, § 1010.306(c) does not reference the FBAR reporting form. The "[r]eports required to be filed by § 1010.350" references § 1010.350(a), which provides that a person with "a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country *shall report such relationship* to the Commissioner of Internal Revenue for each year in which such relationship exists." (emphasis added). Therefore, the "[r]eports required to be filed," for purposes of § 1010.306(c), refers to a report of a "financial account" or other such relationship.

violation may be either willful or not willful.  *See* 31 U.S.C. § 5321(a)(5)(B), (C).  Regardless of the mens rea, the actus reus is the same: "any violation of, any provision of section 5314."    *Compare* 31 U.S.C. § 5321(a)(5)(A) (penalty authorized for "any violation of, any provision of § 5314" that is not willful), *with id.*, § 5321(a)(5)(C) (penalty authorized for "any violation of, any provision of § 5314" that is willful).    Subparagraphs (B)(i), (C) and (D) of § 5321(a)(5) explain the penalties that may be assessed for any "violation," which vary depending on the mens reas (willful or not).

For violations that are not committed willfully, subparagraph (B)(i) provides that the penalty "shall not exceed $10,000."    Subparagraph (B)(ii) includes an exception for "any violation" if it was due to "reasonable cause" and if "the amount of the transaction or the balance in the account at the time of the transaction was properly reported."  This language indicates that the failure to report a single transaction, or the balance in a single account, constitutes a violation.

For violations committed willfully, subparagraph (C)(i) provides that the maximum penalty is the greater of $100,000 or 50 percent of an amount determined in subparagraph (D).  Subparagraph (D) sets out two different amounts.  Subparagraph (D)(i) provides that "in the case of a violation involving a transaction" the relevant amount is "the amount of the transaction."    Subparagraph (D)(ii) provides that "in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account" the relevant amount is "the balance in the account at the time of the violation."  This language makes clear that

a violation may involve "a failure to report the existence of an account" or may involve a single transaction.

Reading these provisions together in a straightforward manner, a "violation" of § 5314 is the same whether the mens rea is willful or not willful: the failure to report a single account or a single transaction. A person with an interest in a financial account in a foreign country must report that relationship to the IRS. The person must provide the report pursuant to the appropriate procedures, including meeting the June 30 deadline, and submitting the report on the appropriate reporting form. 31 U.S.C. § 5314(a), 31 C.F.R. §§ 1010.350(a), 1010.306(c). The failure to do so is a violation subject to a civil penalty. If that same person had an interest in a second financial account in a foreign country, that person would have the same obligation to report the second account to the IRS pursuant to the relevant procedures. The failure to do so would be a second violation, and that person would be subject to a second civil penalty.

In other words, the applicable statute and regulations make clear that any failure to report a foreign account is an independent violation, subject to independent penalties. Accordingly, the district court did not err in affirming the IRS's imposition of penalties against Boyd for each failure to report a foreign account.

III

The majority's arguments to the contrary do not comport with the language of the relevant statutes and regulations.

The majority's primary argument appears to be as follows. A penalty under § 5321(a) is imposed for a violation of a provision of § 5314. Section 5314 incorporates the regulatory requirements in § 1010.350 and

§ 1010.306.  Section 1010.350 requires a person to report foreign accounts in a reporting form.  The majority then misreads § 1010.306 as requiring the reporting form (rather than the reports themselves) to be filed before June 30 of each year.  According to the majority, Boyd violated only the requirement to file the reporting form on time.  31 C.F.R. § 1010.306(c).  Because Boyd had only one violation—the failure to timely file the reporting form—only one penalty can be assessed.  Maj. 10–12.

The majority's analysis is wrong because the majority conflates the "report" that a person must make, with the "reporting form" required by the regulations.  Contrary to the majority, there is no language in the relevant statutes or regulations providing that it "is the failure to file an annual FBAR that is the violation contemplated and that triggers the civil penalty provisions of § 5321."  Maj. at 12 n.7 (quoting *United States v. Bittner*, 469 F. Supp. 3d 709, 718 (E.D. Tex. 2020)).    Rather, as indicated above, the statute and regulations make clear that the requirement to report an account and the requirement to file a reporting form are distinct, and the violation of § 5314 described in § 5321 includes the failure to report the existence of an account before June 30, as required by § 1010.306(c).

The majority attempts to explain away the language in § 5321(a)(5)(B) and (D) indicating that a failure to report the existence of a single transaction or a single account constitutes a violation.  The majority acknowledges that language in subparagraph (D), § 5321(a)(5)(D), "explicitly bases the penalty amount on the balance of *any* account willfully misreported or non-reported."    Maj. at 14 (emphasis added).  But the majority argues that Congress intended a "violation" of § 5314 that is not willful to include only the failure to file a single reporting *form*, and intended

a "violation" of § 5314 that is willful to include the failure to report the existence of each foreign account.

This reasoning fails. The "normal rule of statutory construction" is that "identical words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (citation omitted). Nothing in the language of § 5321 suggests that Congress wanted the word "violation" to have a different meaning in different subparagraphs. As mentioned above, even though subparagraphs (B) and (D) refer to different mens rea, the actus reus (the violation itself) is defined the same way—as "any violation of, any provision of section 5314"—for violations that are both willful and not willful. *See* 31 U.S.C. § 5321(a)(5)(A) (penalty authorized for "any violation of, any provision of § 5314" that is not willful); § 5321(a)(5)(C) (penalty authorized for "any violation of, any provision of § 5314" that is willful). Moreover, other language in the statute indicates Congress's understanding that a single transaction can constitute a "violation" of a provision in § 5314. *See* 31 U.S.C. § 5321(a)(5)(B)(ii) (providing that a violation is excused if it involved a properly reported "transaction"); § 5321 (a)(5)(D)(i) (referring to "a violation involving a transaction"). Therefore, there is no basis for defining the word "violation" differently when it is used in subparagraph (B) than when it is used in subparagraph (D). If subparagraph (D) explicitly establishes that the word "violation" refers to the failure to report the existence of an account, we must use that definition through the entire section.

The majority acknowledges that the word "violation" in § 5321(a)(5)(D)(ii) refers to the conduct of failing to report the existence of a single account, but claims that the same word in § 5321(a)(5)(B)(i) refers to the conduct of failing to

file a reporting form. Maj. at 16 n.10. It thus defines "violation" differently in the two different contexts. In an effort to brush off this interpretive problem, the majority claims that it is "simply giv[ing] effect to Congress's intent to formulate two different schemes of punishment for willful and non-willful violations." Maj. at 16 n.10. But this is not responsive. While Congress chose to impose different punishments for willful and non-willful violations, nothing in the statute suggests that the *conduct* that violates § 5314 (failing to file a report of an account) changes with the violator's mens rea.

Finally, the majority makes the last-ditch argument that we must strictly construe a tax provision that imposes a penalty. Maj. at 18–19 (citing *Bradley v. United States*, 817 F.2d 1400, 1402–03 (9th Cir. 1987) (stating that "a penalty cannot be assessed unless the words of the provision plainly impose it," but affirming a penalty assessed against an individual who had no legal obligation to pay taxes)). The majority's construction of the relevant statutes and regulations is not "strict"; rather, it is strained and unpersuasive. Under the most natural reading of the relevant statutes and regulations, each failure to report a foreign account is a separate violation. "We are not impressed by the argument that [any doubtful question] should be resolved in favor of the taxpayer." *Fang Lin Ai v. United States*, 809 F.3d 503, 506–07 (9th Cir. 2015) (internal citations and quotation marks omitted). Rather, "where the rights of suitors turn on the construction of a [tax] statute . . . it is our duty to decide what that construction fairly should be," and "doubts which may arise upon a cursory examination of [tax statutes may] disappear when they are read, as they must be, with every other material part of the statute, and in the light of their legislative history." *Id.* at 507. Therefore, "we do not mechanically resolve doubts in favor of the taxpayer but

instead resort to the ordinary tools of statutory interpretation." *Id.*

\*\*\*

Boyd violated § 1010.306(c) for each report of a foreign account that she failed to file before June 30. Because she failed to file thirteen such reports, she committed thirteen violations of a provision in § 5314, and the IRS could have assessed penalties of up to $130,000. *See* 31 U.S.C. § 5321(a)(5)(B). Therefore, it was permissible for the IRS to assess penalties in the amount of $47,279, and the district court did not err in granting summary judgment in favor of the government. By holding otherwise, the majority misinterprets the relevant statutes and regulations in a manner that unfairly favors the tax evader. I therefore dissent.

# APPENDIX A

**TD F 90-22.1**
(Rev. March 2011)
Department of the Treasury

Do not use previous editions of this form

**REPORT OF FOREIGN BANK AND FINANCIAL ACCOUNTS**

Do NOT file with your Federal Tax Return

OMB No. 1545-2038
1 This Report is for Calendar Year Ended 12/31

Amended ☐

### Part I   Filer Information

2   Type of Filer

a ☐ Individual    b ☐ Partnership    c ☐ Corporation    d ☐ Consolidated    e ☐ Fiduciary or Other—Enter type _____

3   U.S. Taxpayer Identification Number

If filer has no U.S. Identification Number complete Item 4.

4   Foreign identification (Complete only if item 3 is not applicable.)

a Type of: ☐ Passport    ☐ Other _____

b Number _____    c Country of Issue _____

5   Individual's Date of Birth MM/DD/YYYY

6   Last Name or Organization Name

7   First Name

8   Middle Initial

9   Address (Number, Street, and Apt. or Suite No.)

10   City    11   State    12   Zip/Postal Code    13   Country

14   Does the filer have a financial interest in 25 or more financial accounts?

☐ Yes   If "Yes" enter total number of accounts _____

(If "Yes" is checked, do not complete Part II or Part III, but retain records of this information)

☐ No

### Part II   Information on Financial Account(s) Owned Separately

15   Maximum value of account during calendar year reported

16   Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below

17   Name of Financial Institution in which account is held

18   Account number or other designation

19   Mailing Address (Number, Street, Suite Number) of financial institution in which account is held

20   City    21   State, if known    22   Zip/Postal Code, if known    23   Country

### Signature

44   Filer Signature

45   Filer Title, if not reporting a personal account

46   Date (MM/DD/YYYY)

**File this form with: U.S. Department of the Treasury, P.O. Box 32621, Detroit, MI 48232-0621**

This form should be used to report a financial interest in, signature authority, or other authority over one or more financial accounts in foreign countries, as required by the Department of the Treasury Regulations 31 CFR 1010.350 (formerly 31 CFR 103.24). No report is required if the aggregate value of the accounts did not exceed $10,000. **See Instructions For Definitions.**

**PRIVACY ACT AND PAPERWORK REDUCTION ACT NOTICE**

Pursuant to the requirements of Public Law 93-579 (Privacy Act of 1974), notice is hereby given that the authority to collect information on TD F 90-22.1 in accordance with 5 USC 552a (e) is Public Law 91-508; 31 USC 5314; 5 USC 301; 31 CFR 1010.350 (formerly 31 CFR 103.24).

The principal purpose for collecting the information is to assure maintenance of reports where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings. The information collected may be provided to those officers and employees of any constituent unit of the Department of the Treasury who have a need for the records in the performance of their duties. The records may be referred to any other department or agency of the United States upon the request of the head of such department or agency for use in a criminal, tax, or regulatory investigation or proceeding. The information collected may also be provided to appropriate state, local, and foreign law enforcement and regulatory personnel in the performance of their official duties. Disclosure of this information is mandatory. Civil and criminal penalties, including in certain circumstances a fine of not more than $500,000 and imprisonment of not more than five years, are provided for failure to file a report, supply information, and for filing a false or fraudulent report. Disclosure of the Social Security number is mandatory. The authority to collect is 31 CFR 1010.350 (formerly 31 CFR 103.24) . The Social Security number will be used as a means to identify the individual who files the report.

The estimated average burden associated with this collection of information is 20 minutes per respondent or record keeper, depending on individual circumstances. Comments regarding the accuracy of this burden estimate, and suggestions for reducing the burden should be directed to the Internal Revenue Service, Bank Secrecy Act Policy, 5000 Ellin Road C-3-242, Lanham MD 20706.

Cat. No. 12996D      Form **TD F 90-22.1** (Rev. 3-2011)

**Part II** *Continued*—Information on Financial Account(s) Owned Separately

Form TD F 90-22.1

Page Number ___ of ___

Complete a Separate Block for Each Account Owned Separately

This side can be copied as many times as necessary in order to provide information on all accounts.

| 1 Filing for calendar year ___ ___ ___ ___ | 3–4 Check appropriate Identification Number<br>☐ Taxpayer Identification Number<br>☐ Foreign Identification Number<br>Enter identification number here: | 6 Last Name or Organization Name |
|---|---|---|

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below |
|---|---|
| 17 Name of Financial Institution in which account is held | |
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below |
|---|---|
| 17 Name of Financial Institution in which account is held | |
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below |
|---|---|
| 17 Name of Financial Institution in which account is held | |
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below |
|---|---|
| 17 Name of Financial Institution in which account is held | |
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below |
|---|---|
| 17 Name of Financial Institution in which account is held | |
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |

| 15 Maximum value of account during calendar year reported | 16 Type of account   a ☐ Bank   b ☐ Securities   c ☐ Other—Enter type below |
|---|---|
| 17 Name of Financial Institution in which account is held | |
| 18 Account number or other designation | 19 Mailing Address (Number, Street, Suite Number) of financial institution in which account is held |
| 20 City | 21 State, if known | 22 Zip/Postal Code, if known | 23 Country |

Form **TD F 90-22.1** (Rev. 3-2011)

Form TD F 90-22.1 (Rev. 3-2011)                                                                                            Page **7**

**(3)** An officer or employee of an Authorized Service Provider is not required to report signature authority over a foreign financial account that is owned or maintained by an investment company that is registered with the Securities and Exchange Commission. Authorized Service Provider means an entity that is registered with and examined by the Securities and Exchange Commission and provides services to an investment company registered under the Investment Company Act of 1940.

**(4)** An officer or employee of an entity that has a class of equity securities listed (or American depository receipts listed) on any United States national securities exchange is not required to report signature authority over a foreign financial account of such entity.

**(5)** An officer or employee of a United States subsidiary is not required to report signature authority over a foreign financial account of the subsidiary if its United States parent has a class of equity securities listed on any United States national securities exchange and the subsidiary is included in a consolidated FBAR report of the United States parent.

**(6)** An officer or employee of an entity that has a class of equity securities registered (or American depository receipts in respect of equity securities registered) under section 12(g) of the Securities Exchange Act is not required to report signature authority over a foreign financial account of such entity.

**Trust Beneficiaries.** A trust beneficiary with a financial interest described in section (2)(e) of the financial interest definition is not required to report the trust's foreign financial accounts on an FBAR if the trust, trustee of the trust, or agent of the trust: **(1)** is a United States person and **(2)** files an FBAR disclosing the trust's foreign financial accounts.

**United States Military Banking Facility.** A financial account maintained with a financial institution located on a United States military installation is not required to be reported, even if that military installation is outside of the United States.

**Filing Information**

**When and Where to File.** The FBAR is an annual report and must be **received** by the Department of the Treasury **on or before June 30th** of the year following the calendar year being reported. **Do Not file with federal income tax return.**

File by mailing to:

Department of the Treasury
Post Office Box 32621
Detroit, MI 48232-0621

If an express delivery service is used, file by mailing to:

IRS Enterprise Computing Center
ATTN: CTR Operations Mailroom, 4th Floor
985 Michigan Avenue
Detroit, MI 48226

The FBAR may be hand delivered to any local office of the Internal Revenue Service for forwarding to the Department of the Treasury, Detroit, MI. The FBAR may also be delivered to the Internal Revenue Service's tax attaches located in United States embassies and consulates for forwarding to the Department of the Treasury, Detroit, MI. The FBAR is not considered filed until it is received by the Department of the Treasury in Detroit, MI.

**No Extension of Time to File.** There is no extension of time available for filing an FBAR. Extensions of time to file federal tax returns do NOT extend the time for filing an FBAR. If a delinquent FBAR is filed, attach a statement explaining the reason for the late filing.

**Amending a Previously Filed FBAR.** To amend a filed FBAR, check the "Amended" box in the upper right hand corner of the first page of the FBAR, make the needed additions or corrections, attach a statement explaining the additions or corrections, and staple a copy of the original FBAR to the amendment. An amendment should not be made until at least 90 calendar days after the original FBAR is filed. Follow the instructions in "When and Where to File" to file an amendment.

**Record Keeping Requirements.** Persons required to file an FBAR must retain records that contain the name in which each account is maintained, the number or other designation of the account, the name and address of the foreign financial institution that maintains the account, the type of account, and the maximum account value of each account during the reporting period. The records must be retained for a

period of 5 years from June 30th of the year following the calendar year reported and must be available for inspection as provided by law. Retaining a copy of the filed FBAR can help to satisfy the record keeping requirements.

An officer or employee who files an FBAR to report signature authority over an employer's foreign financial account is not required to personally retain records regarding these accounts.

**Questions.** For questions regarding the FBAR, contact the Detroit Computing Center Hotline at 1-800-800-2877, option 2.

**Explanations for Specific Items**

**Part I — Filer Information**

**Item 1.** The FBAR is an annual report. Enter the calendar year being reported. If amending a previously filed FBAR, check the "Amended" box.

**Item 2.** Check the box that describes the filer. Check only one box. Individuals reporting only signature authority, check box "a". If filing a consolidated FBAR, check box "d". To determine if a consolidated FBAR can be filed, see Part V. If the type of filer is not listed in boxes "a" through "c", check box "e", and enter the type of filer. Persons that should check box "e" include, but are not limited to, trusts, estates, limited liability companies, and tax-exempt entities (even if the entity is organized as a corporation). A disregarded entity must check box "e", and enter the type of entity followed by "(D.E.)". For example, a limited liability company that is disregarded for United States federal tax purposes would enter "limited liability company (D.E.)".

**Item 3.** Provide the filer's United States taxpayer identification number. Generally, this is the filer's United States social security number (SSN), United States individual taxpayer identification number (ITIN), or employer identification number (EIN). Throughout the FBAR, numbers should be entered with no spaces, dashes, or other punctuation. If the filer does NOT have a United States taxpayer identification number, complete Item 4.

**Item 4.** Complete Item 4 only if the filer does NOT have a United States taxpayer identification number. Item 4 requires the filer to provide information from an official foreign government document to verify the filer's nationality or residence. Enter the document number followed by the country of issuance, check the appropriate type of document, and if "other" is checked, provide the type of document.

**Item 5.** If the filer is an individual, enter the filer's date of birth, using the month, day, and year convention.

**Items 9, 10, 11, 12, and 13.** Enter the filer's address. An individual residing in the United States must enter the street address of the individual's United States residence, not a post office box. An individual residing outside the United States must enter the individual's United States mailing address. If the individual does not have a United States mailing address, the individual must enter a foreign residence address. An entity must enter its United States mailing address. If the entity does not have a United States mailing address, the entity must enter its foreign mailing address.

**Item 14.** If the filer has a financial interest in 25 or more foreign financial accounts, check "Yes" and enter the number of accounts. Do not complete Part II or Part III of the FBAR. If filing a consolidated FBAR, only complete Part V, Items 34-42, for each United States entity included in the consolidated FBAR.

**Note.** If the filer has signature authority over 25 or more foreign financial accounts, only complete Part IV, Items 34-43, for each person for which the filer has signature authority, and check "No" in Part I, Item 14.

Filers must comply with applicable recording keeping requirements. See Record Keeping Requirements.

**Part II — Information on Financial Account(s) Owned Separately**

Enter information in the applicable parts of the form only. Number the pages used, and mail only those pages. If there is not enough space to provide all account information, copy and complete additional pages of the required Part as necessary. Do not use any attachments unless otherwise specified in the instructions.

Case: 19-55585, 11/08/2019, ID: 11494907, DktEntry: 17, Page 42 of 48

Form TD F 90-22.1 (Rev. 3-2011)                                                                                    Page 8

## Item 15. Determining Maximum Account Value.

**Step 1.** Determine the maximum value of each account (in the currency of that account) during the calendar year being reported. The maximum value of an account is a reasonable approximation of the greatest value of currency or nonmonetary assets in the account during the calendar year. Periodic account statements may be relied on to determine the maximum value of the account, provided that the statements fairly reflect the maximum account value during the calendar year. For Item 15, if the filer had a financial interest in more than one account, each account must be valued separately.

**Step 2.** In the case of non-United States currency, convert the maximum account value for each account into United States dollars. Convert foreign currency by using the Treasury's Financial Management Service rate (this rate may be found at www.fms.treas.gov) from the last day of the calendar year. If no Treasury Financial Management Service rate is available, use another verifiable exchange rate and provide the source of that rate. In valuing currency of a country that uses multiple exchange rates, use the rate that would apply if the currency in the account were converted into United States dollars on the last day of the calendar year.

If the aggregate of the maximum account values exceeds $10,000, an FBAR must be filed. An FBAR is not required to be filed if the person did not have $10,000 of aggregate value in foreign financial accounts at any time during the calendar year.

For United States persons with a financial interest in or signature authority over fewer than 25 accounts that are unable to determine if the aggregate maximum account values of the accounts exceeded $10,000 at any time during the calendar year, complete Part II, III, IV, or V, as appropriate, for each of these accounts and enter "value unknown" in Item 15.

**Item 16.** Indicate the type of account. Check only one box. If "Other" is selected, describe the account.

**Item 17.** Provide the name of the financial institution with which the account is held.

**Item 18.** Provide the account number that the financial institution uses to designate the account.

**Items 19-23.** Provide the complete mailing address of the financial institution where the account is located. If the foreign address does not include a state (e.g., province) or postal code, leave the box(es) blank.

## Part III — Information on Financial Account(s) Owned Jointly

Enter information in the applicable parts of the form only. Number the pages used, and mail only those pages. If there is not enough space to provide all account information, copy and complete additional pages of the required Part as necessary. Do not use any attachments unless otherwise specified in the instructions.

**For Items 15-23, see Part II.** Each joint owner must report the entire value of the account as determined under Item 15.

**Item 24.** Enter the number of joint owners for the account. If the exact number is not known, provide an estimate. Do not count the filer when determining the number of joint owners.

**Items 25-33.** Use the identifying information of the principal joint owner (excluding the filer) to complete Items 25-33. Leave blank items for which no information is available. If the filer's spouse has an interest in a jointly owned account, the filer's spouse is the principal joint owner. Enter "(spouse)" on line 26 after the last name of the joint spousal owner. See Exceptions, Certain Accounts Jointly Owned by Spouses, to determine if the filer's spouse is required to independently report the jointly owned accounts.

## Part IV — Information on Financial Account(s) Where Filer has Signature Authority but No Financial Interest in the Account(s)

Enter information in the applicable parts of the form only. Number the pages used, and mail only those pages. If there is not enough space to provide all account information, copy and complete additional pages of the required Part as necessary. Do not use any attachments unless otherwise specified in the instructions.

**25 or More Foreign Financial Accounts.** Filers with signature authority over 25 or more foreign financial accounts must complete only Items 34-43 for each person on whose behalf the filer has signature authority.

**Modified Reporting for United States Persons Residing and Employed Outside of the United States.** A United States person who **(1)** resides outside of the United States, **(2)** is an officer or employee of an employer who is physically located outside of the United States, and **(3)** has signature authority over a foreign financial account that is owned or maintained by the individual's employer should only complete Part I and Part IV, Items 34-43 of the FBAR. Part IV, Items 34-43 should only be completed one time with information about the individual's employer.

**For Items 15-23, see Part II.**

**Items 34-42.** Provide the name, address, and identifying number of the owner of the foreign financial account for which the individual has signature authority over but no financial interest in the account. If there is more than one owner of the account for which the individual has signature authority, provide the information in Items 34-42 for the principal joint owner (excluding the filer). If account information is completed for more than one account of the same owner, identify the owner only once and write "Same Owner" in Item 34 for the succeeding accounts with the same owner.

**Item 43.** Enter filer's title for the position that provides signature authority (e.g., treasurer).

## Part V — Information on Financial Account(s) Where Corporate Filer Is Filing a Consolidated Report

Enter information in the applicable parts of the form only. Number the pages used, and mail only those pages. If there is not enough space to provide all account information, copy and complete additional pages of the required Part as necessary. Do not use any attachments unless otherwise specified in the instructions.

**Who Can File a Consolidated FBAR.** An entity that is a United States person that owns directly or indirectly a greater than 50 percent interest in another entity that is required to file an FBAR is permitted to file a consolidated FBAR on behalf of itself and such other entity. Check box "d" in Part I, Item 2 and complete Part V. If filing a consolidated FBAR and reporting 25 or more foreign financial accounts, complete only Items 34-42 for each entity included in the consolidated FBAR.

**For Items 15-23, see Part II.**

**Items 34-42.** Provide the name, United States taxpayer identification number, and address of the owner of the foreign financial institution as shown on the books of the financial institution. If account information is completed for more than one account of the same owner, identify the owner only once and write "Same Owner" in Item 34 for the succeeding accounts of the same owner.

## Signatures

**Items 44-46.** The FBAR must be signed by the filer named in Part I. If the FBAR is being filed on behalf of a partnership, corporation, limited liability company, trust, estate, or other entity, it must be signed by an authorized individual. Enter the authorized individual's title in Item 45.

An individual must leave "Filer's Title" blank, unless the individual is filing an FBAR due to the individual's signature authority. If an individual is filing because the individual has signature authority over a foreign financial account, the individual should enter the title upon which his or her authority is based in Item 45.

A spouse included as a joint owner, who does not file a separate FBAR in accordance with the instructions in Part III, must also sign the FBAR (in Item 44) for the jointly owned accounts. See the instructions for Part III.

## Penalties

A person who is required to file an FBAR and fails to properly file may be subject to a civil penalty not to exceed $10,000. If there is reasonable cause for the failure and the balance in the account is properly reported, no penalty will be imposed. A person who willfully fails to report an account or account identifying information may be subject to a civil monetary penalty equal to the greater of $100,000 or 50 percent of the balance in the account at the time of the violation. See 31 U.S.C. section 5321(a)(5). Willful violations may also be subject to criminal penalties under 31 U.S.C. section 5322(a), 31 U.S.C. section 5322(b), or 18 U.S.C. section 1001.

40

# APPENDIX B

Appendix B

31 U.S. Code § 5314. **Records and reports on foreign financial agency transactions**

(a)Considering the need to avoid impeding or controlling the export or import of monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency. The records and reports shall contain the following information in the way and to the extent the Secretary prescribes:
(1)the identity and address of participants in a transaction or relationship.
(2)the legal capacity in which a participant is acting.
(3)the identity of real parties in interest.
(4)a description of the transaction.
(b)The Secretary may prescribe—
(1)a reasonable classification of persons subject to or exempt from a requirement under this section or a regulation under this section;
(2)a foreign country to which a requirement or a regulation under this section applies if the Secretary decides applying the requirement or regulation to all foreign countries is unnecessary or undesirable;
(3)the magnitude of transactions subject to a requirement or a regulation under this section;
(4)the kind of transaction subject to or exempt from a requirement or a regulation under this section; and
(5)other matters the Secretary considers necessary to carry out this section or a regulation under this section.
(c)A person shall be required to disclose a record required to be kept under this section or under a regulation under this section only as required by law.

31 U.S. Code § 5321. **Civil penalties**
(a)
(5)Foreign financial agency transaction violation.—
(A)Penalty authorized.—
The Secretary of the Treasury may impose a civil money penalty on any person who violates, or causes any violation of, any provision of section 5314.
(B)Amount of penalty.—
(i)In general.—
Except as provided in subparagraph (C) [willful violations], the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.

(ii)Reasonable cause exception.—No penalty shall be imposed under subparagraph (A) with respect to any violation if—

(I)such violation was due to reasonable cause, and

(II)the amount of the transaction or the balance in the account at the time of the transaction was properly reported.

(C)Willful violations.—In the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314—

(i)the maximum penalty under subparagraph (B)(i) shall be increased to the greater of—

(I)$100,000, or

(II)50 percent of the amount determined under subparagraph (D), and

(ii)subparagraph (B)(ii) shall not apply.

(D)Amount.—The amount determined under this subparagraph is—

(i)in the case of a violation involving a transaction, the amount of the transaction, or

(ii)in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation.

31 CFR § 1010.306 - **Filing of reports.**

(c) Reports required to be filed by § 1010.350 shall be filed with FinCEN on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year.

(d) Reports required by § 1010.311, § 1010.313, § 1010.340, § 1010.350, § 1020.315, § 1021.311 or § 1021.313 of this chapter shall be filed on forms prescribed by the Secretary. All information called for in such forms shall be furnished.

(e) Forms to be used in making the reports required by § 1010.311, § 1010.313, § 1010.350, § 1020.315, § 1021.311 or § 1021.313 of this chapter may be obtained from BSA E-Filing System. Forms to be used in making the reports required by § 1010.340 may be obtained from the U.S. Customs and Border Protection or FinCEN.

31 CFR § 1010.350 - **Reports of foreign financial accounts.**

(a) In general. Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1), or any successor form. See paragraphs (g)(1) and (g)(2) of this section for a special rule for persons with a financial interest in 25 or more accounts, or signature or other authority over 25 or more accounts.